G. K. FARGO and Another v. NICHOLS-CHISHOLM LUMBER COMPANY.[1]

November 26, 1909.

Nos. 16,372—(151).

**Assignment of Duebill — Findings Supported by Evidence.**
    Evidence considered, and *held* to be sufficient to sustain the trial court's findings and decision to the effect that the interveners are entitled to recover the amount of the duebill, which is the subject-matter of this action, on the ground that an assignment thereof from them was secured by fraud.

Action by G. K. Fargo and C. A. Baker in the district court for Becker county to recover $11,550, balance on defendant's duebill issued to Mary Brunette, and by her assigned to plaintiffs, on a timber deed given to defendant company. Mary Brunette in her complaint in intervention alleged that she received no consideration from the plaintiffs for the assignment of said duebill; that plaintiffs had not acquired title to the property mentioned in the opinion up to

[1]Reported in 123 N. W. 298.

the time this action was begun and prayed that the contract for the purchase of the property be declared null and void. The grandparents of Mary Brunette, On-don-ge-gah-bow-eak and May-thuck-ke-gi-shig, also intervened. The case was tried before Taylor, J., who made findings and as conclusions of law found that plaintiffs were not entitled to any relief; that Mary Brunette was entitled to judgment decreeing her to be the owner of the duebill in controversy; that the assignment of the duebill be set aside, annulled and canceled; that plaintiffs have no interest in or lien upon the duebill; that the contract for the purchase of the Thief River Falls property was null and void and that the same be annulled; that intervener was entitled to judgment against Nichols-Chisholm Lumber Company for the sum of $10,550; that intervener Brunette should refund to plaintiffs $281.13. From an order denying plaintiffs' motion for a new trial, they appealed. Affirmed.

M. J. Daly, C. M. Johnston and Fred Dennis, for appellants.

John H. Steele and Simon Michelet, for respondents.

START, C. J.

The interveners herein are mixed-blood Chippewa Indians residing on the White Earth reservation. Mary Brunette, who is twenty-eight years old, is the grand-daughter of her co-interveners. The grand-father is over eighty years old, and has been chief of his tribe. His wife, an aged woman, received from the United States an allotment of eighty acres of pine land in the county of Becker. The grandparents, on March 30, 1907, conveyed the land to their grand-daughter, Mary Brunette, in consideration of her promise to support them during the life of each. On October 29, 1907, Mary Brunette conveyed the land to the defendant lumber company, her grandparents joining in the deed, for the consideration of $15,600, of which $4,050 was paid in cash, and the balance, $11,550, by its duebill to Mary Brunette. On March 24, 1908, she assigned the duebill to the plaintiffs, her grandparents consenting thereto, in consideration of their executory contract to convey to Mary Brunette certain real estate in Thief River Falls, Minnesota. The defendant refused to pay the duebill to the plaintiffs.

Thereupon they brought this action in the district court of the county of Becker to recover the amount thereof. The defendant, in its answer, admitted its liability on the duebill, and alleged its readiness to pay the amount thereof into court, to be paid to the parties found entitled thereto. Mary Brunette and her grandparents filed complaints in intervention, alleging, in effect, that the duebill and the assignment were obtained from them by fraud, and asking that the executory contract for the purchase of the real estate be set aside, and that Mary Brunette recover the amount of the duebill. The answer of the plaintiffs to the complaints in intervention put in issue the allegations of fraud therein. The issue was tried by the court without a jury, and findings of fact and conclusions of law were made in favor of the interveners. The plaintiffs appealed from an order denying their motion for a new trial.

The court found facts, other than those we have stated, substantially as follows:

The plaintiff Baker, during all the times herein mentioned, was the cashier of the State Bank of Ogema, at Ogema, Minnesota. He was also engaged in buying, selling, and dealing in real estate. The plaintiff Fargo was vice president of the bank, and engaged in the practice of law and in the real estate business in connection with Baker. Mrs. Jennie Ledeboer, hereinafter mentioned, is a mixed-blood Chippewa Indian woman, of much intelligence, shrewdness, and strength of character, who is and for several years has been an intimate friend of intervener Mary Brunette. The plaintiffs desired to make a sale of certain real estate located at Thief River Falls, Minnesota, and plaintiff Fargo, having learned that Mary Brunette had a large sum of money in the hands of the defendant company, decided to make an attempt to sell the Thief River Falls property to her, and on account of the intimate relations existing between Mrs. Ledeboer and Mary Brunette he employed Mrs. Ledeboer to assist him in making such sale, and agreed to pay her for her services three per cent. upon the sale price and her expenses in case such sale should be effected. She undertook such employment, and for the purpose of effecting such sale she induced Mary to visit her at her home. While Mary was her guest, she informed her of the Thief-

River Falls property, and advised her to purchase it. Thereafter she introduced Mary to the plaintiff Fargo as the person with whom she should deal for the property. He induced her to meet him and Mrs. Ledeboer at Thief River Falls and look over the property. She did so, and after they had looked over the property he produced a previously prepared contract for the purchase of the property, which she was induced to execute. The property was encumbered by two mortgages, one for the sum of $5,000, due June 1, 1911, with interest at seven per cent. and one for the sum of $1,000, due November 1, 1911, with a like rate of interest. Under the contract, Mary, as the purchase price for the property, assumed the payment of the mortgages and agreed to pay in cash the sum of $9,000. The plaintiff Fargo stated and represented to her that the property had cost $15,000, and they were not making a cent by the sale, and that she could have twenty years or more in which to pay the mortgages; that her future expense on account of the property would be inconsiderable; and, further, that she would derive an income from the property of eight to ten per cent. upon the amount of her investment. Mary never at any time knew that Mrs. Ledeboer was the agent of plaintiffs, and at all times believed that she was acting for her and in her interest, which was well known to the plaintiffs.

Fargo and Mrs. Ledeboer by their conduct and statements made Mary believe that they were acting as her friends and advisers, for the purpose of caring for and safeguarding her money and safely investing it, and during all the transactions hereinbefore mentioned they both knew that she so believed, and was relying upon and following their judgment and advice. They represented to her that the purchase of this property was the best thing she could do for herself and her grandparents, as by doing so her money would be invested where it would be perfectly safe, and where she would receive a regular and sure income of $135 per month with which to support herself and her grandparents; that plaintiff Fargo by his statements and representations made her believe that the future expense she would incur on account of the property would be far less than what the expense on account of such property will necessarily amount to, and made her believe that the net income which she would receive from

the property would be far more than the net income that could be derived therefrom, and made her believe that she would have no trouble on account of the mortgages, but could let them run indefinitely if she so desired, and made her believe that he would look after the property, and collect the rents therefrom, and place them in the bank to her credit, without expense to her; that during all these transactions intervener Brunette had no consultation with or advice from anyone other than Mrs. Ledeboer and plaintiff Fargo; that she suggested consulting a lawyer, but plaintiff Fargo induced her not to do so by making her believe that he would do all that was necessary to protect her interests; that she knew nothing about transacting business, knew nothing about the value of the property, knew nothing about the income derived therefrom, knew nothing about the future expense she would incur on account of the property, and was not capable of measuring or determining the advantages or disadvantages of this purchase, and did not understand or appreciate the nature, extent, or importance of the obligations she assumed, and was not competent to form any proper or sufficient judgment as to the same, all of which was known to the plaintiffs at the time of the transactions hereinbefore mentioned.

In the transactions Mary did not deal with plaintiffs on equal terms, nor as adverse parties; but she relied upon the judgment and advice of plaintiff Fargo and Mrs. Ledeboer, and executed the contract and other papers by reason of and in reliance upon their advice and counsel, and in consequence of the trust and confidence she reposed in them, and without any intelligent and independent judgment of her own, all of which was known to the plaintiffs at the time the several transactions took place.

The purchase of the property by Mary was unwise, improvident, and against her interest, for the following, among other reasons: She is not competent to handle and manage this property. The value of the property is depreciated by the fact that the present means of access to the second floor will be closed whenever the adjoining property owners shall refuse to permit their property to be used for that purpose, and by the fact that portions of the wall of the building are owned by other parties. The sum the intervener agreed to pay

for this property placed in a bank for a year would bring her a larger amount as interest than the net income from this property in the same time. The mortgages upon the property fall due in 1911, and if not paid then can be foreclosed, and the property sold; and it is probable that the intervener does not possess sufficient business or financial ability to succeed in either paying or renewing them, and would be likely to lose the property.

It is obvious that the facts found justify the trial court's conclusion of law that the intervener Mary is entitled to recover the amount of the duebill, without prejudice to the rights of her grandparents therein. The sole question, then, for our consideration, is whether the findings of fact are sustained by the evidence. We have examined the evidence with much interest, and found that it sustains the findings of fact.

Order affirmed.